**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

AMANDA H.,

                Plaintiff,

v.                                          3:18-CV-0465
                                           (CFH)

ANDREW M. SAUL, [1]
Commissioner of Social Security,

                Defendant.
_____

**APPEARANCES:**                           **OF COUNSEL:**

LACHMAN & GORTON              PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.     LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL
 United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this Social Security action filed by Amanda H. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

---

[1]     Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10 and 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I.   BACKGROUND

Plaintiff was born in 1982, making her 27 years old at the alleged onset date and 35 years old at the ALJ's February 2018 decision. Plaintiff reported completing the eighth grade and obtaining a GED. Plaintiff has no past relevant work. At the initial level, Plaintiff alleged disability due to bipolar disorder, anxiety, depression, and back pain.

### B.   Procedural History

On October 15, 2012, Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income, alleging an onset date of February 3, 2010. Plaintiff's applications were initially denied on February 27, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at hearings before ALJ Elizabeth Koennecke on July 14, 2014, and August 26, 2014. (T. 32-56, 689-713.)[2] On October 28, 2014, ALJ Koennecke issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 12-31, 649-68.) On April 25, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6, 669-74.)

---

[2] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Plaintiff filed a Complaint in the United States District Court for the Northern District of New York and United States Magistrate Judge Daniel J. Stewart ordered remand for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g) upon stipulation of the parties on March 21, 2017. (T. 630, 647-48, 677-80.) On July 28, 2017, the Appeals Council remanded the case to the ALJ indicating the "hearing decision did not fully address the concerns raised by multiple medical sources as to [Plaintiff's] ability to work for a full workweek without an excessive number of absences" and that the decision did not fully address alcohol abuse, which independent examiner Robert Russell, Ed.D., referred to as a primary impairment. (T. 355-71, 644, 681-85.) The Appeals Council indicated Plaintiff's "work attendance should have been addressed in more detail, in particular, as the vocational expert's testimony specified that an absence of one or more days per month would exclude jobs an individual with [Plaintiff's] [RFC] could perform, and this testimony was accepted in the decision." (T. 644, 683.)

The Appeals Council instructed that, upon remand, the ALJ was to "[g]ive further consideration to [Plaintiff's residual functional capacity]" including evaluating the non-treating source opinion[3] and non-examining source opinion of E. Kamin, Ph.D., pursuant to the provisions of 20 C.F.R. §§ 404.1527 and 416.927, "explain the weight given to such opinion evidence[,]" "further evaluate [Plaintiff's] alleged symptoms[,]" and, "[i]f warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base." (T. 645, 684.)

---

[3] It is unclear whether the non-treating source opinion identified by the Appeals Council was that of consultative examiner Mary Ann Moore, Psy.D., (whose opinion had previously been discounted by ALJ Koennecke as too vague) or that of Dr. Russell (whose statements the Appeals Council indicated did not appear overstated). (T. 683-84.)

Plaintiff appeared at a subsequent administrative hearing before ALJ Koennecke on January 24, 2018. (T. 628-41.) On February 1, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 606-27.) Plaintiff then filed a new Complaint in the United States District Court for the Northern District of New York on April 16, 2018. (Dkt. No. 1.)

## C. ALJ's Decision

First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2012. (T. 612.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 3, 2010, the alleged onset date. (*Id.*) Third, the ALJ found that Plaintiff's mental impairment is a severe impairment. (*Id.*) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 613-14.) Specifically, the ALJ considered Listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels while retaining the ability to

> understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and relate to and interact with others to the extent necessary to carry out simple tasks, but [Plaintiff] should avoid work requiring more complex interaction or joint efforts to achieve work goals. [She] is able to engage in superficial contact with the public. [She] is able to handle work-related stress, in that she is able to make simple decisions directly related to the completion of her tasks and work in a stable, unchanging work environment.

(T. 615.) Sixth, the ALJ found that Plaintiff has no past relevant work. (T. 619.) Seventh, and lastly, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (T. 619-20.) The ALJ therefore concluded that Plaintiff is not disabled.

## D.    Arguments

### 1.    Plaintiff's Motion for Judgment on the Pleadings

Plaintiff argues that the ALJ failed to properly assess Plaintiff's limitations in work pace and attendance and improperly substituted "her opinion for undisputed medical opinion" on these issues. (Dkt. No. 10, at 12-16 [Pl.'s Mem. of Law].) Plaintiff maintains that Dr. Russell, Dr. Moore, treating provider Darlene Denzien, D.O., and non-examining consultant Dr. Kamin all assessed limitations to Plaintiff's ability "to meet employer expectations for work pace and attendance" and that the "ALJ does not cite to any contradictory medical opinions on these issues." (*Id.* at 13-14.) Plaintiff also contends that the "ALJ does not actually engage in any analysis addressing the issues of work pace or attendance" and that Dr. Kamin's opinion provides no explanation and, therefore, his opinion cannot be given any weight. (*Id.* at 14-16.)

Plaintiff next argues that the ALJ failed to comply with the Appeals Council's remand order. (*Id.* at 17-18.) Specifically, Plaintiff contends that the ALJ did not address the Appeals Council's remand instructions and failed to fully address the concerns of multiple medical sources as to the ability to complete a full work week without an excessive number of absences. (*Id.* at 17.) Plaintiff also argues that the Appeals Council noted that the ALJ previously improperly concluded that Dr. Moore's opinion was too vague and again found this opinion too vague, declining to adopt its

findings, despite the Appeal's Council's conclusion that it did not indicate vagueness. (*Id.*)  Plaintiff additionally contends that the ALJ again gave Dr. Russell's opinion minimal weight despite the Appeals Council's conclusion his statements did not appear overstated.  (*Id.*; T. 683.)  Plaintiff points out that the Appeals Council directed the ALJ to clarify the extent of absenteeism and that the sources found too vague by the ALJ were Defendant's sources and could only be contacted by the ALJ.  (*Id.* at 17-18.)

Plaintiff also contends that the ALJ made improper credibility determinations based on Plaintiff's work history and "intermittent" treatment.  (*Id.* at 18-20.)  Plaintiff maintains that her poor work history "provides concrete, historically based evidence that she does not have the mental functioning to engage in full time work on a regular and continuing basis."  (*Id.* at 19.)  Plaintiff also contends her treatment and "failure to make all appointments only exemplifies the difficulties she will experience in work pace and attendance due to her psychiatric impairments."  (*Id.* at 19-20.)

Plaintiff argues that the ALJ improperly assessed the medical evidence.  (*Id.* at 20-25.)  Plaintiff contends that the ALJ gave significant weight to Dr. Moore's opinion, but failed to properly account for her findings in the RFC determination.  (*Id.* at 20.)  Plaintiff also argues that the ALJ erred in giving Dr. Russell's opinion minimal weight rather than great weight because (1) he examined Plaintiff and performed testing on two separate occasions; (2) his findings are supported by the opinions of Dr. Moore and Dr. Kamin; (3) his opinions are consistent with the overall medical evidence; (4) he is a specialist; and (5) he performed an extensive, thorough evaluation and psychological testing.  (*Id.* at 21-23.)

Plaintiff contends the ALJ erred in failing to give weight to Dr. Kamin's finding of moderate diminishment to the ability to maintain a regular schedule or keep a normal work pace. (*Id.* at 23.) Plaintiff maintains that the ALJ erred in affording minimal weight to Dr. Denzien's opinion, and that this opinion should have been afforded significant weight because she examined Plaintiff on numerous occasions over a long period of time, she has a lengthy treating relationship with Plaintiff, her opinions are consistent with the opinions of Dr. Russell, Dr. Moore, and portions of Dr. Kamin's opinion, her findings are consistent with the medical records, and she has extensive experience in psychiatric care and treatment and should therefore be considered a specialist. (*Id.* at 23-25.)

Plaintiff contends that the ALJ's RFC concerning Plaintiff's ability to interact with others, handle work-related stress, and/or make decisions is not supported by substantial evidence. (*Id.* at 25-26.) Plaintiff maintains that the ALJ did not properly account for Plaintiff's difficulties in dealing with stress. (*Id.* at 26.) Finally, Plaintiff argues that Defendant did not sustain the Commissioner's burden at Step Five because the VE's testimony was unreliable as it was based on a flawed and incomplete hypothetical question. (*Id.* at 27.)

Defendant argues that the ALJ appropriately complied with the Appeals Council's remand order because the ALJ considered the maximum RFC supported by the record, evaluated the opinion evidence based on the regulations, and addressed Plaintiff's ability to work without excessive absences. (Dkt. No. 13, at 7-8 [Def.'s Mem. of Law].) Defendant also contends that substantial evidence supports the ALJ's RFC finding because "the ALJ properly reviewed all of the pertinent medical evidence, and provided

a sound rationale for the RFC finding." (*Id.* at 8-17.) Defendant also argues that the ALJ properly evaluated Plaintiff's symptoms under the regulations. (*Id.* at 17-18.) Defendant maintains that the Commissioner met his burden at Step Five because the ALJ appropriately relied on the vocational expert testimony. (*Id.* at 18.)

## II. LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age,

education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Complied with the Appeals Council's Remand Order and Properly Considered the Opinion Evidence and RFC

The regulations provide that upon remand an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be ground for remand. *See Mortise v. Astrue*, 713 F. Supp. 2d 111, 120-24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); *Gorman v. Astrue,* 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding, in part, based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule).

## 1. The ALJ's Analysis of the Opinion Evidence

In February 2013, consultative examiner Dr. Moore noted Plaintiff was quite anxious throughout the evaluation and exhibited restless motor behavior (including scratching at her neck, back and arms) and initially demonstrated poor eye contact which improved. (T. 453.) Plaintiff also had a nervous affect and anxious mood, impaired attention and concentration possibly due to learning issues and anxiety, generally intact recent and remote memory skills, fair insight, and fair-to-poor judgment with anxiety and depression. (T. 454.) Dr. Moore diagnosed panic disorder with agoraphobia, posttraumatic stress disorder, bipolar II disorder without psychotic features, alcohol abuse in remission, and cannabis abuse in remission and opined that Plaintiff could

> follow and understand simple directions and instructions, perform simple rote tasks under supervision, and consistently perform simple tasks. She did show difficulty with attention and concentration. Memory was intact. She has the ability to learn simplistic and complex tasks, although it would take her longer to learn and retain the complex information. However, she has difficulty dealing with stress. She is exhibiting depression and bipolar as well as agoraphobia which would cause problems relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule. The results of the examination appear to be consistent with psychiatric issues, that may significantly interfere with [her] ability to function on a daily basis.

(T. 455-56.)

The ALJ noted that "Dr. Moore opined that, despite difficulty dealing with stress, [Plaintiff] is able to follow and understand simple instructions and directions, perform simple rote tasks under supervision, perform simple tasks consistently, and learn simplistic tasks." (T. 455, 617.) The ALJ subsequently indicated she gave significant

weight to Dr. Moore's opinion due to her programmatic expertise and the "relative consistency" of her opinion with the overall medical evidence. (T. 617.) The ALJ indicated, however, that Dr. Moore's statements that Plaintiff "'has difficulty dealing with stress'" and "'problems relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule' are vague, non-specific, and unquantified." (T. 455, 617.)

In February 2013, as part of the initial determination, Dr. Kamin opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation of extended duration; Dr. Kamin also indicated that Plaintiff retained the ability to perform simple work. (T. 66-70.) The ALJ afforded significant weight to Dr. Kamin's opinion because of programmatic expertise and relative consistency with the overall medical evidence. (T. 617.)

In November 2009, Dr. Russell completed a psychological evaluation noting Plaintiff's poor work history and history of behavioral problems, fighting, and alcohol abuse. (T. 357-58.) He noted Plaintiff met the criteria for alcohol abuse and she might have reduced the frequency of her drinking over the years, but she still had a significant problem with her alcohol usage. (T. 360.) Dr. Russell diagnosed alcohol abuse in partial remission, major depressive disorder (recurrent, moderate), and paranoid and borderline personality disorders. (*Id.*) Dr. Russell noted

> [a]lthough she may well be able to secure a position, somewhere, her lack of reliability and her temper are likely to make sustained employment improbable. Her abrasive and chronic personality disorders are likely to interfere with her getting along with others on the job and her depression may interfere with her getting motivated to report to work.

(*Id.*)  In September 2012, Dr. Russell completed an addendum, noting that Plaintiff had never followed through with referrals to mental health services in the past, but had recently started counseling and medication management.  (T. 366.)  He indicated that her "ability to work will be severely impaired by her abrasive personality style and her inability to maintain cordial and cooperative interpersonal relations on the job." (*Id.*)  At that time, he added a diagnosis of antisocial personality disorder because it fit her basic interpersonal style even though she did not have an extensive criminal history.  (T. 366-67.)  Dr. Russell noted that "[i]n addition to her having conflicts with coworkers and supervisors, she is likely to be irresponsible with showing up to work" as part of her antisocial personality style and that she "may be able to secure a job but it is unlikely that she will be able to sustain employment over time . . . [h]er [] personality disorders are significant and likely to sabotage her relationships with supervisors, coworkers and/or customers."  (*Id.*)

The ALJ afforded minimal weight to Dr. Russell's November 2009 and September 2012 opinions "because they are inconsistent with the overall medical evidence, including the opinions of psychologist Moore and psychological consultant Kamin."  (T. 355-71, 618.)  The ALJ also indicated that she gave minimal weight to these assessments because Dr. Russell did not have a treating relationship with Plaintiff and his assessed Global Assessment of Functioning ("GAF") scores did not provide a view of Plaintiff's functioning over an extended period of time.  (T. 618.)  The ALJ stated that Dr. Russell's "conclusions are based only on [Plaintiff's] reporting which is not in pursuit of treatment, but in pursuit of benefits," that Dr. Russell did not provide an appropriate function-by-function assessment of Plaintiff's mental work-related abilities,

and that his observations appeared to be based mainly on Plaintiff's self-reports. (*Id.*) Finally, the ALJ indicated that Dr. Russell included alcohol abuse as Plaintiff's primary impairment, but that Plaintiff testified that she had not used alcohol in seven years and alcohol issues were not mentioned consistently in the record. (*Id.*)

In May 2014, primary care physician Dr. Denzien noted Plaintiff's bipolar disorder and agoraphobia and opined that Plaintiff had (1) marked limitations in the ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance and/or be punctual within customary tolerances, complete a normal work day and workweek without interruptions from psychological based symptoms, perform at a consistent pace without an unreasonable number or length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers; (2) medium limitations in the ability to interact appropriately with the general public; and (3) extreme limitations in the ability to respond appropriately to ordinary stressors in a work setting with simple tasks. (T. 595-96.) Dr. Denzien also opined that Plaintiff would be off-task more than 33 percent of the day and absent three or more days per month and indicated that these limitations had been present since July 2007. (T. 596). The record also contains multiple assessment forms that Dr. Denzien submitted to the Broome County Department of Social Services between 2012 and 2015 indicating Plaintiff was not able to work for varying lengths of time and had difficulty keeping her appointments. (T. 269, 292, 369-71, 538, 877, 875.)

The ALJ afforded "minimal weight to the May 2014 check-box medical source statement" from Dr. Denzien "because it is not consistent with the overall medical evidence, including her own treatment notes and the opinions of psychologist Moore

and psychological consultant Kamin." (T. 618, 594-97.) The ALJ noted that Dr. Denzien is not a psychologist and "her treatment notes contain minimal positive clinical findings from appropriate mental status examinations." (T. 266-354, 539-93, 598-605, 618.) The ALJ indicated that Dr. Denzien's "marked" or "extreme" limitation findings "appear quite inconsistent with [Plaintiff's] activities of daily living," and that Dr. Denzien offered no clinical findings establishing Plaintiff would be off-task more than 33 percent of the work day and absent for more than three days per month. (T. 618.) The ALJ also noted that she requested a clarification on the absences and off-task time, but Plaintiff's "attorney provided no additional evidence pertaining to this issue." (T. 618, 716-17.) The ALJ noted a gap in Plaintiff's treatment with Dr. Denzien between April 2010 and May 2012, during which "Dr. Denzien opined [Plaintiff] had no work-related functional limitations, stating that 'since [she] did not come for appointments, I assume she is all better.'" (T. 296, 368, 618.) The ALJ additionally gave no weight to Dr. Denzien's reports for the Broome County Department of Social Services "because they do not contain an appropriate function-by-function assessment of [Plaintiff's] mental work-related abilities and because they are inconsistent with the overall medical evidence." (T. 269, 369-71, 538, 619.)

## 2. Court's Analysis

In her decision, the ALJ acknowledged that, pursuant to the District Court remand order, the Appeals Council directed her to

> (1) give further consideration to [Plaintiff's] maximum [RFC] during the entire period at issue; (2) further evaluate [Plaintiff's] alleged symptoms and provide rationale in accordance with the Regulations; (3) if warranted by the expanded record, obtain supplemental evidence from a vocational expert; and (4) if necessary, conduct further proceedings to determine whether alcoholism is a contributing factor material to the finding of disability.

(T. 609.) The ALJ further noted that she specifically looked at whether alcohol abuse was a severe impairment and that Plaintiff testified her last use was seven years prior. (T. 613.) The ALJ indicated that, aside from the one comment from Dr. Russell, "this concern is not repeated throughout the record." (*Id.*) Additionally, the ALJ noted that she requested a clarification on the absences and off-task time, but that Plaintiff's "attorney provided no additional evidence pertaining to this issue." (T. 618, 716-17.)

The Court finds that the ALJ's summary of the Appeals Council's remand instructions and her notations regarding alcohol abuse and absences/off-task time do not fully appreciate the Appeals Council's instructions, nor does the ALJ's decision fully comply with those instructions. (T. 617-19, 644-45, 683-84.) Not only does the ALJ reiterate her conclusions regarding the opinions from Dr. Moore and Dr. Russell despite the Appeals Council's observations that Dr. Moore's opinion did not indicate vagueness and Dr. Russell's "statements similarly did not appear overstated," but the ALJ's opinion analysis in her opinion appears to be a near mirror image of her analysis from her October 2014 opinion. (T. 22-24, 617-19, 683-84.) Apart from adding a few sentences regarding Dr. Russell's conclusion on alcohol abuse and noting her own request for clarification on absences/time off-task, the ALJ does not address the issues the Appeals Council identified or add any additional analysis indicating that she considered those issues when weighing the opinion evidence and determining Plaintiff's RFC. (T. 617-19.) The ALJ's nominal additions are not sufficient to allow for meaningful judicial review in this case.

The ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings. *Hamedallah ex rel. E.B. v.*

*Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Because the ALJ's February 2018 analysis bears almost no difference from her October 2014 decision, the Court cannot determine whether she fully complied with the Appeals Council's remand order and adequately addressed the issues identified therein. Likewise, the Court cannot determine whether the ALJ properly considered the opinion evidence and Plaintiff's RFC. For the reasons above, the Court cannot conclude that the ALJ complied with the Appeals Council's remand order or that substantial evidence supports the ALJ's analysis of the opinion evidence and Plaintiff's RFC. Remand is therefore required on these bases.

Further, the Appeals Council should consider assigning this case on remand to a different ALJ pursuant to HALLEX I-2-1-55(D). 1993 WL 642977. Although the decision "whether to assign a new ALJ on remand is generally a determination for the Commissioner" and Plaintiff has not asked the Court for such relief, the Commissioner "should consider in [his] discretion whether the case warrants a 'fresh look' by a new

ALJ." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 300-01 (W.D.N.Y. 2006) (citing *Nunez v. Barnhart*, 01-CV-5714, 2002 WL 31010291 (E.D.N.Y. Sept. 9, 2002); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998)).

### 3. Whether Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Symptoms and the Step Five Determination

Because remand is required on other grounds, the Court declines to reach findings on Plaintiff's arguments regarding the ALJ's evaluation of Plaintiff's symptoms and the Step Five determination. (Dkt. No. 10, at 18-20, 27 [Pl.'s Mem. of Law].) However, the ALJ's errors in complying with the Appeals Council's remand order and considering the medical opinion evidence along with Plaintiff's RFC tainted her evaluation of Plaintiff's symptoms and the Step Five determination. On remand, the ALJ should conduct a new analysis pertaining to Plaintiff's symptoms as well as a new Step Five determination.

## IV. CONCLUSION

**WHEREFORE**, for the reason set forth herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: August 16, 2019
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge